UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
HAYM SALOMON HOME FOR THE AGED, LLC,

                    *Plaintiff*,

            -against-

HSB GROUP, INC. d/b/a/ THE HARTFORD STEAM
BOILER INSPECTION AND INSURANCE
COMPANY, and AMERICAN STANDARD, INC.
d/b/a TRANE U.S., INC.,

                    *Defendants*.
-------------------------------------------------------------------x

MEMORANDUM
AND ORDER

06-CV-3266 (JG) (JMA)

A P P E A R A N C E S:

    LAW OFFICE OF SETH EISENBERGER
    108 Airport Executive Park
    Nanuet, New York 10954
    By:    Seth Eisenberger
    *Attorney for the Plaintiff*

    MORRISON MAHONEY LLP
    17 State Street, Suite 1110
    New York, New York 10004
    By:    Aarti Soni
             Arthur J. Liederman
             Lawrence Aloysius Dugan
             Julia D'Agostino
    *Attorneys for the Defendant Hartford Steamboiler Inspection and Insurance Company*

    KIRKPATRICK & LOCKHART
    One Newark Center
    Newark, New Jersey 07102
    By:    Christopher R. Carton
             Suzanne M. Brodock
    *Attorneys for the Defendant Trane U.S., Inc.*

JOHN GLEESON, United States District Judge:

        In July 2006, Haym Salomon Home for the Aged LLC ("Haym Salomon," or the

"Home") filed this case against several defendants, including Hartford Steamboiler Inspection

and Insurance Company ("HSB") and Trane U.S., Inc. ("Trane"). Haym Salomon filed an amended complaint on September 29, 2006, which alleges that HSB and Trane breached their insurance and maintenance contracts, respectively, HSB by refusing to cover the replacement of the Home's air conditioning unit, and Trane by failing to repair the unit. On September 15, 2009, Haym Salomon filed a motion in limine to preclude HSB's experts from testifying at trial. Trane joined in this motion. Also on September 15, 2009, Haym Salomon filed a motion for partial summary judgment as against HSB. On October 15, 2009, Trane filed a motion for summary judgment as against Haym Salomon. On October 16, 2009, HSB opposed Haym Salomon's motion and cross-moved for partial summary judgment. I heard oral argument on all four motions on December 18, 2009. For the reasons stated below, the motions are granted in part and denied in part.

BACKGROUND

For the purposes of the instant motions, I accept undisputed facts as true and resolve disputed facts in favor of the non-moving party where there is evidence to support its allegations.

In approximately 2000, Haym Salmon purchased an Air Conditioning Unit ("ACU") from Trane. Contained within the ACU was a Direct Fire Generator ("DFG"), which contained 177 tubes. Beginning when the ACU was installed at the Home, Haym Salomon maintained service contracts with Trane for the ACU. In addition, Haym Salomon had an insurance policy with HSB, which insured the ACU.

On approximately June 1, 2005, the ACU stopped working. Upon inspecting the unit, Trane determined that the DFG had at least two leaks, at least one of which was in the length of one of the DFG tubes. Specifically, Dean Tsioptsias, the service specialist who went to

the Home when Trane was notified of the ACU's failure, stated in his deposition that when he took the cover off of the DFG unit, he saw one tube spraying liquid while another was dripping with liquid. An employee of Haym Salomon, Mark Jarvis, also observed the liquid coming out of the tubes and determined that there were at least two leaks. The tubes are not covered by the Trane service contract. Further, Trane advised Haym Salomon that the tubes in the DFG could not be repaired or replaced at the installation site and, instead, a new DFG should be purchased.

On approximately June 8, 2005, Haym Salomon informed HSB that the ACU was not operational. On June 10, 2005, Trane advised HSB that no DFG tubes had ever been replaced or repaired in an onsite ACU. Trane also advised HSB, as well as Haym Salomon, that the unit would have to be replaced. Haym Salomon subsequently purchased a new DFG from Trane.

In July and August 2005, HSB retained Atlas Welding and Par Mechanical ("Par"). At the request of HSB, Atlas Welding removed the rear of the DFG and cut into it. On August 17, 2005, Par performed a test of the DFG on behalf of HSB. Par's representative, Dennis Casey, stated that there were two positive tests, which suggested there was a leak in a DFG tube. John Bevington and Karen T. Fuentes, who are HSB's proposed experts in this case, witnessed the test on behalf of HSB. At the end of October 2005, HSB directed Atlas Welding to cut out tubes from the DFG for testing at M&M Engineering's facility.

In June 2007, HSB stated that Haym Salomon had failed to provide documentation demonstrating that the damage to the DFG was the result of an "accident" within the meaning of HSB's policy. HSB further told Haym Salomon that there was no evidence that a leak existed in the DFG.

In October 2008, Fuentes, on behalf of M&M Engineering, provided an Expert Report regarding her examination of the DFG. She found that "[n]o leaks could be located in the [DFG] during pressure testing of the unit." Ex. D. to Decl. of Arthur J. Liederman. Bevington also issued a report. His report stated that no leaks were found in the tubes when they were subjected to pressure up to 19 pounds per square inch ("psi"), even though Trane had purportedly found a leak at 3 psi. Further, Bevington stated that, contrary to Trane's assertion, there was no tube failure in the DFG. Bevington further stated that even if there were a leak in a DFG tube, Haym Salomon could have patched it.

Robin R. Lee, Trane's Technical Service Engineer, stated in a letter dated September 1, 2005, that repairing the leaky tubes would cause additional damage, potentially damaging the entire ACU. Further, she noted that no repair on a DFG tube has ever been successfully performed.

DISCUSSION

A.  *Admission of Expert Testimony*

Haym Salomon and Trane move to preclude the expert testimony of Karen Fuentes and John Bevington, HSB's proposed experts. Rule 702 of the Federal Rules of Civil Procedure provides that an expert can testify in the form of an opinion if: "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Civ. P. 702. Rule 702 requires me to ensure that "any and all scientific testimony or evidence is not only relevant, but reliable." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993). Haym Salomon and Trane do not argue that the expert testimony is irrelevant, but rather that the experts are not qualified to testify as experts.

1.  *Fuentes*

Karen Fuentes has been a registered professional engineer in the State of Texas since 1985. She received a degree in engineering from the University of Texas in 1980 and is a member of the American Society of Mechanical Engineers. Fuentes is president and senior consulting engineer of M&M Engineering Associates, Inc., which performs accident investigations, failure analysis and materials testing of a wide range of components. Her resume states that she "conducts the on-site analysis of in-service failures." She has performed several investigations to determine the cause and origin of a failure in equipment, the scope of the damage and any options for repair. Fuentes's educational background and work experience appropriately cover the disputed factual issues in this case. Accordingly, Fuentes has sufficient "knowledge, skill, experience, training, or education" in the engineering field to qualify her as an expert witness. Fed. R. Civ. P. 702. Furthermore, her testimony is based on sufficient and reliable facts. She was present at a pressurized leak test, dry magnetic particle testing, pneumatic pressure testing and destructive testing of the DFG. She relied on these tests in forming her opinion.

Haym Salomon and Trane contend that Fuentes is not qualified to testify as an expert because she has tested only two DFGs during her career: the DFG at issue in this case and one 15 years ago. I conclude, however, that this type of dispute over the strength of an expert's credentials goes "to the weight, not the admissibility, of [her] testimony." *McCullock v. H.B. Fuller Co.,* 61 F.3d 1038, 1044 (2d Cir. 1995); *see also Yaccarino v. Motor Coach Industries, Inc.,* No. 03-CV-4527, 2006 WL 5230033, at *9 (E.D.N.Y. Sept. 29, 2006)("the trial court … need not preclude an expert from testifying merely because he or she does not possess experience tailored to the precise product or process that is the subject matter of the dispute.").

Given her expertise and experience in the area at issue, the motion to preclude Fuentes's expert testimony is denied.

2. *Bevington*

Haym Salomon and Trane also object to the expert testimony of John Bevington, contending that he does not have the educational or experiential background necessary to testify as an expert in this case. However, for the purposes of deciding the plaintiff's summary judgment motion, a decision on whether to admit Bevington's testimony is unnecessary given my decision regarding the admissibility of Fuentes's testimony. Indeed, since Bevington is a fact witness as well, and thus will appear at trial in any event, it may be appropriate to address the admissibility of his expert testimony (which may also implicate cumulativeness concerns) only after hearing the testimony of Fuentes.

3. *Lee*

Haym Salomon seeks to offer as an expert Robin Lee, who is Trane's expert as well. There being no objection from HSB, and seeing no reason such testimony would be improper, the request is granted.

B. *The Summary Judgment Standard of Review*

Summary judgment is appropriate only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also e.g.*, *O'Hara v. Weeks Marine, Inc.*, 294 F.3d 55, 61 (2d Cir. 2002). The moving party must demonstrate that no genuine issue exists as to any material fact. *Gallo v. Prudential Residential Servs.*, *Ltd. P'ship,* 22 F.3d 1219, 1223 (2d Cir. 1994). A fact is "material" within the meaning of Rule 56 when its resolution "might affect the outcome of the suit under the

governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In determining whether an issue is genuine, "[t]he inferences to be drawn from the underlying affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion." *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 202 (2d Cir. 1995) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (*per curiam*); *Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 465 (2d Cir. 1989)). Therefore, although a court "should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 151 (2000). However, the party opposing summary judgment "may not rely merely on allegations or denials in its own pleading; rather, its response must … set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e).

Once the moving party has met its burden, "the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis in original). The nonmoving party cannot survive summary judgment by casting mere "metaphysical doubt" upon the evidence produced by the moving party. *Matsushita*, 475 U.S. at 586. Nor will "conclusory statements, conjecture, or speculation" by the nonmoving party defeat the motion. *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996). Summary judgment is proper when the moving party can show that "little or no evidence may be found in support of the nonmoving party's case." *Gallo*, 22 F.3d at 1223-24 (citations omitted).

1. *Breach of Contract Claim as Against HSB and Trane*

Haym Salomon alleges that HSB breached its insurance policy with Haym Salomon by refusing to acknowledge that the irreparable leak in at least one of the DFG tubes was a covered accident under the policy. HSB argues that Haym Salomon has not established that the DFG's failure is within the scope of coverage, because Haym Salomon has not shown that the cause of the leak, if one even existed, was not corrosion, a condition the policy does not cover. In the alternative, Haym Salomon argues that if there was no leak (or if the leak was repairable), then Trane is liable for the necessary repairs. For its part, Trane maintains that the unit had leaks and was not repairable.

There are genuine issues of material fact that preclude summary judgment. First, there is a dispute over whether there was even a leak in the DFG tubes. Fuentes's report states that "[n]o leaks could be located in the" unit. Ex. D to Liederman Decl. In contrast, Dennis Casey of Par Mechanical testified that his testing showed evidence of two leaks. Casey Dep. 145-47. Second, there is a dispute regarding the role, if any, that corrosion played in causing the DFG's failure. A metallurgical examination conducted by Joseph Crosson of Lucius Pitkin, Inc., revealed that there was "general corrosion" and that the "pitting and grooving was the result of corrosion attack." Ex. Q to Liederman Decl. Furthermore, at his deposition, Crosson stated that he believed the corrosive build-up occurred over time and was not an "accident." Ex. P to Liederman Decl. In contrast, Trane determined that the DFG's failure was "catastrophic" and that corrosion pitting was the result (rather than the cause) of the leak. Lee Dep. at 123, 141. Third, there is a dispute as to whether the leak, if it existed, was repairable. Robin Lee, Trane and Haym Salomon's expert, stated that the tubes could not be replaced and that Trane did not recommend temporarily plugging the tube leaks since it had never been done before. Lee Dep. at

8

125. William Taffe stated in his deposition that a DFG tube can be plugged if there is a leak. Although Taffe acknowledged that Trane had never completed such repairs, he testified that such repairs were possible. Taffe Dep. at 28-29; *see also* Lee Dep. at 151-52.

As there are genuine issues of material fact, the motions for summary judgment by Trane and Haym Salomon are denied as to the breach of contract claims.

2. *Haym Salomon's Claim for Bad Faith Denial of Coverage*

New York generally does not recognize a damages claim for bad faith denial of coverage because it is duplicative of a claim based on the defendant-insurer's breach of contract. *Zawahir v. Berkshire Life Ins. Co.,* 804 N.Y.S.2d 405, 406 (2d Dep't 2005); *Royal Indemnity Co., et al. v. Salomon Smith Barney, Inc., et al.,* 764 N.Y.S.2d 187, 188 (1st Dep't 2003); *see also Bettan v. Geico Gen. Ins. Co.*, 745 N.Y.S.2d 545, 546 (2d Dep't 2002); *New York Univ. v. Cont'l Ins. Co.,* 87 N.Y.2d 308, 316-17 (1995).

However, as the recent decision in *Grinshpun v. Travelers Cas. Co. of Connecticut,* 2009 WL 1025747 (N.Y. Sup. Ct. March 11, 2009) observed, there is a narrow exception to that rule "where an insurer refuses, in bad faith, to pay a claim of its own insured." *Id.* at *2. Relying on the New York Court of Appeals' decision in *Sukup v. State of New York,* 19 N.Y.2d 519 (1967), the court found that the plaintiff could bring a claim for litigation costs and attorney's fees when it alleges bad faith on the part of the insurer. *Id.* at *2-3; *see also Liberty Surplus Ins. Corp. v. The Segal Co.,* 420 F.3d 65, 70 (2d Cir. 2005). It bears noting that such a claim requires a plaintiff to prove more than merely "an arguable difference of opinion" over coverage; to recover extra-contractual damages the plaintiff must show "such bad faith in denying coverage that no reasonable carrier would, under the given facts, be expected to assert it." *Sukup*, 19 N.Y.2d at 522. Because the parties agree there was a weld leak and there are two

9

experts whose opinions support HSB's denial of coverage, the actions of HSB do not rise to the level of bad faith required by *Sukup*.[1]

Haym Salomon claims it is also entitled to punitive damages for the defendant's alleged bad faith denial of coverage. The courts in *Sukup* and *Grinshpun* contemplated only the award of legal expenses. *Id.*; *Sukup,* 19 N.Y.2d at 522. Neither case discussed the propriety of awarding punitive damages, and indeed the court in *Grinshpun* specifically stated that the plaintiff was not seeking punitive damages. *Grinshpun*, 2009 WL 1025747 at *2.

Even if punitive damages were recoverable here, Haym Salomon cannot, as a matter of law, prove the elements required for such a remedy. "[T]he standard for awarding punitive damages in first-party insurance actions is 'a strict one,' and this extraordinary remedy will be available 'only in a limited number of instances.'" *Rocanova v. Equitable Life Assurance Society of U.S.,* 83 N.Y.2d 603, 613 (1994)(citations omitted). Punitive damages may be awarded when "the defendant's conduct evinced a high degree of moral turpitude and demonstrated such wanton dishonesty as to imply a criminal indifference to civil obligations." *Walker v. Sheldon,* 10 N.Y.2d 401, 405 (1961). For the reasons discussed above, HSB's denial of coverage cannot reasonably be characterized as evincing "a high degree of moral turpitude … [or] wanton dishonesty." *Id.* In addition, Haym Salomon has failed to prove, as required for a punitive damages claim associated with a breach of contract, that the conduct was "part of a

---

[1] Two years ago, the New York Court of Appeals further extended this doctrine of extra-contractual damages; the court held that an insured can seek consequential damages for an insurer's breach of the covenant of good faith and fair dealing. *Bi-Economy Market Inc., v. Harleysville Insur. Co. of New York,* 10 N.Y.3d 187, 192-94 (2008). Specifically, the court held that the plaintiff could seek damages for "the complete demise of its business operation" if that demise resulted from the defendant's bad faith breach. *Id.* at 191. However, Haym Salomon is not seeking such damages. Haym Salomon does not allege that it suffered any damages as a result of the breach of bad faith apart from those suffered as a result of the breach of contract. In fact, apart from punitive damages, Haym Salomon seeks the same amount in damages from the bad faith denial of coverage and breach of contract claims. Accordingly, *Bi-Economy* is not relevant here.

pattern directed at the public generally."[2] *New York Univ.,* 87 N.Y.2d at 316. The conduct here "involves complex insurance coverage and proof of loss … [which] is essentially a 'private' contract dispute over policy coverage and the processing of a claim which is unique to these parties, not conduct which affects the consuming public at large." *Id.* 321. As a result, Haym Salomon fails to state a claim for punitive damages.

Accordingly, Haym Salomon's claim for bad faith denial of coverage is dismissed in its entirety.

3. *Haym Salomon's Claim as Against HSB and Trane for Breach of Good Faith and Fair Dealing*

Haym Salomon alleges that HSB and Trane have breached their duty of good faith and fair dealing. Such a duty is implicit in every contract. *Skillgames, LLC v. Brody,* 767 N.Y.S.2d 418, 423 (1st Dep't 2003). However, an allegation that the defendants breached that duty will be dismissed if the wrongful conduct was "also the predicate for a claim for breach of covenant of an express provision of the underlying contract." *In re Houbigant Inc.,* 914 F. Supp. 964, 989 (S.D.N.Y. 1995); *see also Engelhard Corp. v. Research Corp.,* 702 N.Y.S.2d 255, 255 (1st Dep't 2000). Here, the allegations underlying this claim are virtually identical to the factual allegations supporting Haym Salomon's claim for breach of contract. Accordingly, the defendants' motions for summary judgment as to this claim are granted.

---

[2] Haym Salomon argues that New York law does not require proof of a public wrong. *Topps Co. v. Cadbury Stani S.A.I.C.,* 380 F. Supp. 2d 250, 264 (S.D.N.Y. 2005). However, Haym Salomon misreads the holding of *Topps*. The Court in *Topps* held that punitive damages can be awarded without a showing of public wrong when the claim sounds in tort and is "unrelated to a contractual relationship." *Id.* at 264. As a result, the Court dismissed the plaintiff's claim for fraudulent inducement because it arose from "its long-standing contractual relationship" with the defendant and the plaintiff could not show there was a public wrong. *Id.* at 266; *see also Rocanova,* 83 N.Y.2d at 613 (holding that proof of public wrong required when the conduct at issue "constitut[e]s, accompany[ies], or [is] associated with the breach of contract."). The conduct at issue here is clearly associated with a claim for breach of contract and thus, proof of a public wrong is required.

4. *Haym Salomon's Claim as Against HSB for Property Damage*

Haym Salomon alleges that HSB's instruction to Atlas Welding to cut into and remove part of the DFG irreparably damaged the DFG. Later, HSB conducted a destructive test of the equipment. Haym Salomon acknowledged that it consented to the removal and the destruction test, but argues that it believed, based upon representations made by HSB, that the removal and the test were reasonable and necessary. Haym Salomon further contends that HSB unreasonably and unnecessarily destroyed the equipment. Haym Salomon argues that HSB never conducted the destruction testing, whereas HSB argues that such testing not only was completed, but it confirmed the absence of a leak in the length of any of the DFG tubes. Whether the destruction of the evidence was reasonable is an issue of fact requiring trial. Accordingly, summary judgment is inappropriate.

Haym Salomon also alleges that punitive damages are appropriate because of the damage inflicted by HSB to Haym Salomon's property. Punitive damages are available under New York law when the defendant engaged in "gross, wanton, or willful fraud or other morally culpable conduct."[3] *Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 509 (2d Cir. 1991). As discussed above, whether HSB acted reasonably in destroying Haym Salomon's property is genuinely in dispute. Similarly, if HSB did act unreasonably, a jury should determine whether it also acted in a morally culpable fashion in destroying the ACU.

5. *Haym Salomon's Claim as Against HSB and Trane for Negligence and Negligent Misrepresentation*

Haym Salomon claims that if the DFG was repairable, it may recover on claims of negligence and negligent misrepresentation against both HSB and Trane. The elements of

---

[3] The foregoing discussion of punitive damages with regards to Haym Salomon's claim for bad faith denial of coverage does not affect the availability of punitive damages as to the claim for property damage. Property damage is a tort independent of the breach of contract claim and, as such, Haym Salomon's claim for punitive damages does not require proof of a public wrong, but rather proof that the defendant's conduct was "gross, wanton or willful fraud or other morally culpable conduct". *Topps*, 380 F. Supp. 2d at 264.

negligent misrepresentation are: (1) carelessness in imparting words; (2) upon which others are expected to rely; and (3) upon which they acted or failed to act; (4) to their damage. *White v. Guarente,* 43 N.Y.2d 356, 362-63 (1977).

Haym Salomon argues that HSB falsely represented that destruction testing was necessary on the DFG and that in reliance on that statement, Haym Salomon assented to its destruction. Subsequently, Atlas Welding destroyed the DFG in preparation for additional testing, resulting in damage to Haym Salomon. Haym Salomon also claims that Trane negligently misrepresented that the unit could not be repaired. I conclude that there are questions of fact requiring trial regarding whether the DFG was repairable and whether any representations to the contrary were made negligently. Accordingly, summary judgment is inappropriate on these claims.

      6.      *Haym Salomon's Claim as Against HSB for Fraud*

Haym Salomon alleges a claim of fraud against HSB. Specifically, it alleges that "HSB went through the façade of entering into the Policy with plaintiff and … lulling plaintiff into the false sense of security that it would provide coverage. From the outset, HSB intended to take the premiums from the plaintiff, but to avoid coverage at all costs." Pl. Am. Compl. at 16. Under New York law, in order to bring a claim for fraudulent inducement, a plaintiff must allege "a representation of material fact, the falsity of the representation, knowledge by the party making the representation that it was false when made, justifiable reliance by the plaintiff and the resulting injury." *Lerner v. Fleet Bank, N.A.,* 459 F.3d 273, 291 (2d Cir. 2006); *New York Univ.,* 87 N.Y.2d at 318. Accordingly, Haym Salomon must allege that HSB made a material omission or representation, which induced Haym Salomon into entering the contract. *New York Univ.,* 87 N.Y.2d at 318. However, "[g]eneral allegations that defendant entered into a contract while lacking the intent to perform it are insufficient to support the claim." *Id.* Haym Salomon does

not allege HSB made any specific promises outside of HSB's intent to provide coverage pursuant to the contract to induce Haym Salomon into entering the contract. Accordingly, Haym Salomon does not state a claim for fraudulent inducement.

Haym Salomon also alleges that HSB made several fraudulent misrepresentations during the course of the contractual relationship. To the extent Haym Salomon is alleging that the defendants conducted a "sham' investigation to perpetuate [its] alleged fraudulent scheme, these allegations merely evidence plaintiff's dissatisfaction with defendant['s] performance of the contract obligations." *Id.* at 319. Even assuming HSB had an insufficient reason to deny Haym Salomon's insurance claim, that does not state a tort claim, but rather "merely raises a question for the fact finder determining the breach of contract claim." *Id.* Haym Salomon fails to state a claim for fraudulent misrepresentation. Accordingly, HSB's motion is granted as to Haym Salomon's fraud claims.

7. *Haym's Salmon's Claim as Against HSB for Spoliation of Evidence*

Spoliation of evidence is not an independent cause of action under New York law. *Sterbenz v. Attina,* 205 F. Supp. 2d 65, 73-74 (E.D.N.Y. 2002); *Ortega v. City of New York,* 9 N.Y.3d 69, 83 (2007).[4] However, "[a] federal court may, under its inherent power to control the litigation before it, impose sanctions on litigants or their counsel for spoliation of the evidence." *Sterbenz,* 205 F. Supp. 2d at 73-74. "Although a district court has broad discretion in crafting a proper sanction for spoliation, [the Second Circuit has] explained that the applicable sanction should be molded to serve the prophylactic, punitive, and remedial rationales underlying the spoliation doctrine." *West v. Goodyear Tire & Rubber Co.,* 167 F.3d 776, 779 (2d Cir. 1999).

---

[4] In *Ortega*, the Court addressed whether there is an independent claim for third party spoliation of evidence existed in New York. 9 N.Y.3d at 77-78. The plaintiffs argued that the existing remedies, including sanctions for spoliation, were sufficient to address the actions by a third party spoliator and that public policy counseled against the creation of an independent tort for third party spoliation was unnecessary. *Id.* at 79-83. Although the Court did not directly address the issue of a claim by a plaintiff against their adversary for spoliation, the implication of the Court's analysis is that no such independent tort is necessary.

Permissible sanctions include an instruction that the jury can infer that the evidence destroyed was harmful to the spoliator's case, *Residential Funding Corp. v. DeGeorge Fin. Corp.,* 306 F.3d 99, 107-08 (2d Cir. 2002), preclusion of evidence, *Sterbenz,* 205 F. Supp. 2d at 74, and the "harsh remedy" of dismissal or default judgment, *Valentine v. Museum of Modern Art,* 29 F.3d 47, 49 (2d Cir. 1994), *id.* A party seeking an adverse inference instruction must establish

> (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the [evidence was] destroyed "with a culpable state of mind"; and (3) that the destroyed evidence was "relevant" to the party's claim or defense such that a reasonable trier of fact could find that it would support the claim or defense.

*Residential Funding Corp.,* 306 F.3d at 107 (citing *Byrnie v. Town of Cromwell,* 243 F.3d 93, 107-12 (2d Cir. 2001)). The culpable state of mind may be established by ordinary negligence. *Id.* at 108. Plaintiff has not yet sought any of the sanctions that the law makes available when there is spoliation of evidence. Moreover, as discussed above, there is a factual dispute as to whether HSB negligently disposed of the ACU or any of its component parts. An application for sanctions may be made at trial. But since spoliation of evidence is not an independent claim for relief, this claim for damages is dismissed.

      8.     *Trane's Motion to Strike*

Trane moves to strike HSB's opposition to its motion for summary judgment against Haym Salomon. Since I have found there to be a genuine issue of material fact as to Haym Salomon's breach of contract claims against both HSB and Trane, I have denied summary judgment on those issues. Accordingly, Trane's motion to strike HSB's opposition is denied as moot.[5]

---

[5] Haym Salomon has also moved pursuant to Rule 36 to have fourteen of its requests for admission deemed to be admitted facts. Requests for admission are a discovery device and the period for discovery is now closed. Furthermore, summary judgment is not an appropriate vehicle to implement the discovery tools available to the parties. Accordingly, the motion is denied.

15

## CONCLUSION

For the reasons stated above, the motions for summary judgment are denied as to the breach of contract, negligent misrepresentation and property damage claims. HSB's motion for summary judgment are granted as to the claims for bad faith denial of coverage, breach of good faith and fair dealing, fraud and spoliation of evidence. The motion for preclusion of the expert testimony of Fuentes is denied and the motion as to Bevington is denied without prejudice to renewal at trial.

Jury selection and trial will occur on March 15, 2010 at 9:30 A.M. A final pretrial conference will be held on March 5, 2010 at 10:00 A.M.

So Ordered.

John Gleeson, U.S.D.J.

Dated: Brooklyn, New York
January 20, 2010